IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK COOK-BEY, # 174 046, | ) | |
| a/k/a Kendrick Cook, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-520-ECM |
| | ) | |
| AUNDRA JACKSON, LIEUTENANT,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Plaintiff Kendrick Cook-Bey, an inmate in the custody of the Alabama Department of Corrections ("ADOC"), files this *pro se* 42 U.S.C. § 1983 action challenging Defendant Aundra Jackson's processing and handling of his mail at the Bullock Correctional Facility ("Bullock") between April 29, 2016 and May 9, 2016.[2]   He requests damages and declaratory and injunctive relief.[3] Docs. 1 & 9.

Jackson filed an answer, special report, and supporting evidentiary materials addressing Cook-Bey's claims for relief. Docs. 19 & 20.  In these filings, Jackson denies he acted in violation of Cook-Bey's constitutional rights. Docs. 19 & 20.  Upon receipt of Jackson's special report, the court issued an order directing Cook-Bey to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning

---

[1] Plaintiff incorrectly identified Defendant Jackson in the amended complaint as "Andre Jackson." Doc. 9.
[2] In accordance with the prior orders, proceedings, and opinions of the court, Cook-Bey's claims against Warden Michael Strickland and Commissioner Jefferson Dunn were dismissed. *See* Docs. 14 & 22.
[3] Pursuant to the provisions set forth in the court's December 21, 2016 order, adopting the November 1, 2016 recommendation of the Magistrate Judge (Doc. 22), the court considers the factual allegations and relief requested against Defendant Jackson as set forth in the original and amended complaints.

Cook-Bey that "the court may at any time thereafter and without notice to the parties . . . treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 23.  Cook-Bey filed a response and affidavit to Defendant's special report (*see* Docs. 26 & 27), but these responses fail to demonstrate a genuine dispute of material fact. Doc. 23 at 2.  The court will treat Jackson's report as a motion for summary judgment and resolve this motion in his favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing

the record lacks evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When a defendant meets his or her evidentiary burden, as Jackson has in this case, the burden shifts to Cook-Bey to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e).  But a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.  However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendant's] motion for summary judgment, and sworn affidavit attached to that response." *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted, and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l*

*Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (finding conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Cook-Bey fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendant Jackson. *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.   Absolute Immunity

Cook-Bey sues Jackson in his official capacity, but Jackson is entitled to absolute immunity from damages in his official capacity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his or her official capacity

unless the state has waived its Eleventh Amendment immunity, *see Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Thus, Jackson is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (finding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Comm. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (finding damages are unavailable from state official sued in his official capacity); *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.   Injunctive Relief

Cook-Bey requests injunctive and declaratory relief against Jackson for the alleged violations of his constitutional rights. However, Cook-Bey is no longer incarcerated at Bullock.[4] The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also*

---

[4] After filing this action, Cook-Bey was transferred to another correctional facility in Alabama.

*Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (finding past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). Because it is clear from the pleadings and records before the court that Cook-Bey is no longer incarcerated at Bullock, his request for equitable relief is moot.

## C.    Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute here that Jackson was acting within the course and scope of his discretionary authority when the incidents occurred. Cook-Bey must, therefore, allege facts that, when read in a light most favorable to him, show that Jackson is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Cook-Bey must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant

violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *Id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

**D.      Section 1983 Claims**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Cook-Bey brings suit alleging a violation of his First Amendment rights to freedom of the press and the right to petition government and a violation of his Fifth Amendment right to due process. Docs. 1 & 9.  Specifically, Cook-Bey complains that on May 19, 2016, he complained to prison officials about a delay in receiving his mail.  The next week, Jackson refused to give him his incoming mail, "without opening, investigating the contents inside . . . saying its legal mail and has to go back and must come from [an] Attorney." Doc. 9 at 3.  Cook-Bey maintains that he expected three pieces of mail but only received a religious medallion and that "no mail was returned, still delayed." Doc. 9 at 3.

 Jackson states that under Administrative Regulation ("AR") 448 legal mail is logged and opened in the presence of the inmate after he signs for it.  Legal mail is checked only for contraband.  Jackson states that mail which does not meet the definition of legal mail under AR 448, such as mail from family members, is searched for contraband and the

content also is read to ensure that it does not contain prohibited content which would pose a security risk.  Jackson states the regular practice at Bullock is for the mail clerk to handle legal mail and non-legal regular letter-sized envelopes.  Non-legal envelopes that are letter size or larger are considered "packages," and all packages are checked by security staff.  If a package contains improper material, it is placed in a box—generally maintained in the Captain's office—for return to the mail room, where it is given back to the mail clerk. Jackson states that he does not know what happens to the mail after it is returned to the mail clerk. Docs. 20-3 & 20-4.

Jackson testifies that in the Spring of 2016 he assisted another correctional official by processing incoming mail, which included searching incoming packages.  Although unable to recall the specific time frame, Jackson recalled opening envelopes addressed to Cook-Bey that appeared to be addressed from a family member.  Although the correspondence was not marked as legal mail, the contents appeared to contain legal content.  Based on his understanding of prison regulations regarding inmate legal mail, Jackson testifies that he summoned Cook-Bey and explained that he would be returning the mail to the mail room because prison regulations regarding inmate mail did not allow legal mail to be sent through non-legal channels.  Finally, Jackson testifies that his duties in performing searches of inmate mail did not include other responsibilities such as filling out forms regarding mail issues. Doc. 20-3.

### 1.     *Violation of Administrative Regulations*

Cook-Bey complains that Jackson practiced an unwritten policy of violating an inmate's right to receive mail by failing to adhere to prison regulations regarding mail

handling. Specifically, Cook-bey claims that Jackson intentionally delayed, destroyed, lost, or unlawfully returned his mail in violation of AR 448.

A violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. Infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations. *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (finding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment). That state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimension. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding that prison regulations are not intended to confer constitutional rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding mere violations of agency regulations do not raise constitutional questions); *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (finding plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (finding "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations"); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest;

thus, failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding the "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation"); *see also Riccio v. Cnty. of Fairfax, Va*., 907 F.2d 1459, 1469 (4th Cir. 1991) (finding that, if state law grants more protections than constitutionally required, state's failure to abide by its law is not a federal constitutional issue); *Harris v. Birmingham Bd. of Educ*., 817 F.2d 1525, 1527–28 (11th Cir. 1987) (finding violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

In light of the foregoing, Cook-Bey's claim that Jackson violated his constitutional rights by failing to follow prison administrative regulations regarding the handling of his mail provides no basis for relief in this § 1983 action.  Jackson is entitled to qualified immunity on this claim.

### 2.    *First Amendment*

#### a.    **Access to Courts**

Cook-Bey alleges a violation of his right to petition the government because of Jackson's handling of his incoming mail.  The First Amendment broadly guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I.  More specifically, the First Amendment guarantees the right of prisoners to meaningfully access the legal process of the courts to present complaints. *See Woodford v. Ngo*, 548 U.S. 81, 122 (2006); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (citing *Johnson v. Avery*, 393 U.S. 483 (1969)).  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Id*. at 828.  To establish a violation of the right to access to the courts, however, a prisoner must allege facts sufficient to show that: (1) a non-frivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353–55 (1996).  The *Lewis* court disclaimed any expansions of the right of access to the court, which suggested "that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354.

The *Lewis* court held that the actual-injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id.* at 356–57.  "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts— a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360.  The court admonished federal courts to allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id.* at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional

requirements.'" *Id*. at 363 (quoting *Bounds*, 430 U.S. at 832–33).  An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348.  There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson v. Blankenship*, 163 F.3d 1284, 1290–91 (11th Cir. 1998).

Here, Cook-Bey fails to allege that Jackson's challenged conduct, including the officer's purported failure to comply with prison administrative regulations regarding mail handling on any particular occasion, precluded Cook-Bey's pursuit of a non-frivolous direct or collateral attack upon either his criminal conviction or sentence or the conditions of his confinement. *See Lewis*, 518 U.S. at 355 (holding that the right to access to the courts protects only an inmate's need and ability to "attack [his] sentence . . . directly or collaterally, and . . . to challenge the conditions of [his] confinement").  Further, Cook-Bey has not demonstrated that he suffered any adverse consequences because of Jackson's actions resulting in actual injury. *See Lewis*, 518 U.S. at 348; *see also Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (internal quotation marks and citations omitted) (finding that a "plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim").  Finally, Cook-Bey has not alleged that a non-frivolous claim was lost or rejected due to Jackson's conduct or actions. *See Lewis*, 518 U.S. at 348

The court finds no evidence Cook-Bey suffered actual injury to a nonfrivolous legal action, that "a complaint he prepared was dismissed," or that he was "so stymied" by prison officials' actions that "he was unable to even file a complaint," direct appeal, or petition

for writ of habeas corpus that was not "frivolous." *Lewis*, 518 U.S. at 351.  The conduct and actions challenged by Cook-Bey either do not fall into one of these categories or, if they do, fail to establish the requisite injury.  Jackson is therefore entitled to qualified immunity on Cook-Bey's First Amendment right of access to courts claim.

> ### b.   Freedom of Speech

The court considers Cook-Bey's allegations regarding Jackson's treatment of his incoming mail as implicating a free speech claim under the First Amendment.[5]  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al–Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  An inmate "has a First Amendment free speech right [to send and receive legal mail]" which is subject to the limitations attendant to his status as a prisoner and the legitimate penological interests of jail administrators. *Al–Amin*, 511 F.3d at 1333; *see also Turner v. Safely,* 482 U.S. 78 (1987).  Courts are "sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the 'outside' who seek to enter that environment, in person or through the written word." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Courts "afford . . . considerable deference to the determinations of prison

---

[5] Although Cook-Bey complains that Jackson's handling of his mail implicates his constitutional right to freedom of the press, the court considers his claim as arising under the First Amendment right to free speech. *See California First Am. Coal. v. Calderon*, 150 F.3d 976, 981 (9th Cir. 1998) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)) (finding "[t]he right of the press to gather news and information is protected by the First Amendment because 'without some protection for seeking out the news, freedom of the press could be eviscerated'").

administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id*. at 408.   Prison regulations that impinge on an inmate's First Amendment rights must be "reasonably related to legitimate penological interests," and in making that determination, courts consider and balance the four factors set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Thornburgh,* 490 U.S. at 413 (holding *Turner* reasonableness test applies to publications sent to an inmate).   The four *Turner* factors are: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest"; (2) "whether alternative means are open to inmates to exercise the asserted right"; (3) "what impact an accommodation of the right would have on guards and inmates and prison resources"; and (4) "whether there are ready alternatives to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quoting *Turner*, 482 U.S. at 89–91).   Isolated incidents of mail interference, however, generally cannot establish a constitutional violation. *Davis*, 320 F.3d at 351 (finding that the allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm because inmate must show a prison official "regularly and unjustifiably interfered" with his mail); *see also Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) (finding "single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts").

Cook Bey's rejected mail consisted of a "writ (request for three judge court, affidavit, etc)" that he sent to a family member in Texas on or about April 3, 2016 to be typed with four copies to be mailed back to him which he maintains he would then file with the court. Doc. 27 at 1.  After an extended period of time, Cook-Bey became concerned

about the mail he expected back so asked his family to trace the mail, revealing that the mail was at the prison. Doc. 27 at 2.  On May 26, 2016, Jackson summoned Cook-Bey to ask about his knowledge of the contents of his mail. Doc. 27 at 2.  Cook-Bey told Jackson he thought it might be a copy of a claim he would file. Doc. 27 at 2.  Jackson stated it was legal mail, that he could not give it to Cook-Bey, and that the inmate would have to sign for the mail. Doc. 27 at 2–3.  Cook-Bey explained to Jackson that he had sent this mail to a family member who typed the contents and then returned it to Cook-Bey so he could file it with the court. Doc. 27 at 3.  Jackson, however, told Cook-Bey that the mail had to be returned to the sender and would have to be mailed back by an attorney as legal mail. Doc. 27 at 3.

Cook-Bey maintains that he may receive legal advice, instructions, and documents from family members without the need to send this material through an attorney or the courts or risk having it rejected. Doc. 26.  Cook-Bey states that the mail rejected by Jackson did not contain any improper material and there is not an absolute requirement that mail—even legal in nature—must come from the courts or an attorney. Doc. 26.

Jackson's evidence, however, reflects that incoming inmate mail at Bullock is sorted between regular mail and "legal mail."  Under AR 448, legal mail is defined as "[l]etters to and from attorneys, courts, judges, clerks, and other officials of the courts and government agencies." Doc. 20-4.  AR 448 further directs that incoming legal mail should be opened in the presence of the inmate and that a log should be maintained which contains the date the mail is inspected for contraband, lists the legal mail received including the sender's name, and is signed for by the inmate. Doc. 20-4.  Jackson maintains that mail addressed from family members does not qualify as legal mail and is searched for

contraband and is also read to ensure it contains no prohibited content that would pose a security risk. Doc. 20-3.  Jackson testifies that in the Spring of 2016 he opened envelopes addressed to Cook-Bey that appeared to originate from family members, but the content appeared to consist of legal material, and therefore it had not been sent to Cook-Bey in accordance with the institution's internal prison regulations requiring that legal mail not be sent through non-legal channels. Doc. 20-3.  Jackson placed this mail in a box designated for improper material for return to the mail clerk. Doc. 20-3.

Here, the rejection of Cook-Bey's mail demonstrates an isolated incident insufficient to establish a constitutional violation. *Davis*, 320 F.3d at 351.  Cook-Bey has not alleged that Jackson "regularly and unjustifiably" interfered with his mail or that Jackson's actions resulted from improper motivation. *See Davis*, 320 F.3d at 351; *Al-Amin*, 511 F.3d at 1334.  Jackson acknowledges Cook-Bey's factual assertions but asserts that to his knowledge the mail appeared to be an attempt to send legal mail through non-legal channels and required him to return the mail to the mail room.  Although Cook-Bey may disagree with Jackson's determination that the contents of this mail had to be sent to him in accordance with prison regulations governing incoming inmate legal mail, he has not demonstrated that Jackson's actions amounted to an unconstitutional interference with his incoming mail. *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1529 (11th Cir. 1987) (finding "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment").  Jackson is entitled to qualified immunity on this claim. *See Anderson*, 477 U.S. at 252.

### 3.   *Due Process*

Cook-Bey complains that Jackson's failure to comply with prison mail regulations

resulted in the loss or destruction of his mail.  This allegation, however, fails to implicate the due process protection afforded by the Constitution because "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in other part by Daniels v. Williams*, 424 U.S. 327 (1986) (holding that an individual deprived of property by an "unauthorized act" of a state official has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no due process violation occurs "as long as *some* adequate post-deprivation remedy is available"); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (finding inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an intentional deprivation of property violates due process); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process).

"[T]he Alabama legislature has created a statute providing a tort remedy for the unlawful deprivation or interference with an owner's possession of personalty.  Moreover, an aggrieved person may file a claim with the state Board of Adjustment to recover damages to property [or for a loss of property] caused by the state of Alabama or any of its agencies." *Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 623 (M.D. Ala. 1995) (citing Ala. Code § 6-5-260 & § 41-9-60).  Thus, the State of Alabama provides meaningful

post-deprivation remedies for Cook-Bey to seek redress from Jackson's allegedly improper handling of his mail.

To the extent Cook-By maintains that Jackson lacked authority to handle or distribute his mail because he was not hired as a mail clerk, there are no federal laws mandating those individuals who may handle or distribute prisoner mail after the United States Postal Service deposits it at the mailroom of the prison.  Policy and regulations governing inmate mail are the province of prison administration. *See* AR 448; *see also Lewis v. Sec'y, DOC*, 2013 WL 5288989 (M.D. Fla. Sept. 19, 2013) ("[T]he Postal Operations Manual of the United States Post Office states that '[m]ail addressed to inmates at institutions is delivered to the institution authorities who, in turn, deliver the mail to the addressee under the institution's rules and regulations.'").  Further, as explained above, Cook-Bey's alleged violations of internal prison regulations in handling his mail do not amount to constitutional violation.  It is also undisputed that Jackson had no further involvement in processing or handling Cook-Bey's mail after the guard determined that it had to be returned to the mail clerk.  Jackson is entitled to qualified immunity on this claim.

## D.    Criminal Charges

Cook-Bey claims that Jackson's actions in handling his mail violated various federal criminal statutes. *See* Doc. 1 at 2.  But a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex. 1997) ("Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States.  The statute does not create a private cause of action."); *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108

F.3d 1396 (D.C. Cir. 1997) (finding no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (finding that plaintiff has no constitutional right to have a defendant prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) (finding that "the district court properly dismissed [Plaintiff's] complaint as frivolous . . . [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted"); *see also Rockefeller v. U.S. Ct. of App. Office for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (finding that criminal statutes "do not convey a private right of action").  Because this claim is premised upon violations of legal interests that do not exist, it is without merit and due to be dismissed.

## E.    Supplemental Jurisdiction

To the extent Cook-Bey complains that Jackson's conduct in handling his mail violated state law (*see* Doc. 1 at 4), review of this claim is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotation marks and citations omitted).  Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires

dismissal of the state claims." *L.A. Draper & Son*, 735 F.2d at 428. Because of this court's resolution of the federal claims, Cook-Bey's supplemental state-law claim is due to be dismissed. *Gibbs*, 383 U.S. at 726 (holding that if the federal claims are dismissed prior to trial the state claims ordinarily should be dismissed as well); *see also Ray v. Tenn. Valley Auth.*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendant's motion for summary judgment (Doc. 20) be GRANTED;

2.      Judgment be ENTERED in favor of Defendant and against Plaintiff;

3.      This case be DISMISSED with prejudice; and

4.      Costs be TAXED against Plaintiff for which execution may issue.

It is further ORDERED that **on or before June 26, 2019**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th

Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th

Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      DONE on the 12th day of June, 2019.

                                            _____

                                            GRAY M. BORDEN

                                            UNITED STATES MAGISTRATE JUDGE